IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHI XIONG, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )   Case No. 13-CV-173-PJC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
|       Defendant. | ) |

**OPINION AND ORDER**

      Claimant, Chi Xiong ("Xiong"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits and supplemental security income benefits pursuant to the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Xiong appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Xiong was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

**Claimant's Background**

Xiong was 41 years old at the time of the hearing before the ALJ on May 3, 2011. (R. 27, 154). Xiong testified through an interpreter, and she said that she first began having severe pain in May 2008 and went to an emergency room. (R. 34). The physicians diagnosed a hernia, and she had surgery. *Id.* She testified that she did not recover from that surgery as the physicians had hoped that she would. (R. 35-36). Two weeks after the surgery, she returned to work and continued to work until October 7, 2009, although that work was intermittent. (R. 38-39). After October 7, 2009, she was not able to go back to work due to stomach pains. (R. 33, 35-36). Xiong said that she had a second surgery in March 2011. (R. 36). After that second surgery, a "needle-poking" type of pain had resolved itself, but she still had a pain in her stomach that felt hot. *Id.* She said that she could not get up due to the pain, and she spent her time lying down. *Id.* She also felt fatigued. *Id.* She said when she attempted to stand, she would feel lightheaded, and walking was painful. *Id.* She could not eat normally, and she only ate rice and soup. *Id.* She could not sleep, and she had been told not to toss and turn because that would cause more pain. *Id.*

When asked how her condition affected her every day life, she said that she was waiting for her life to end because the pain was constant and never lessened. (R. 37). Because walking quickly caused pain, she walked slowly and took small steps. *Id.* She said that the maximum distance she could walk was from one room in her house to another and back. *Id.* Xiong said that the physicians had told her to hold onto the walls and walk slowly. *Id.* She could not do daily activities around the house because she spent most of her time lying down. *Id.* Her children and her husband did the cooking. *Id.* She could not drive a car. *Id.* She said that she never left the house because she was afraid that she would fall. *Id.*

Xiong testified that if she stayed still in a position lying down, and she took her medication, she felt a little better. *Id.* If the medication wore off, or if she walked faster than usual, then the pain would return. (R. 37-38). She only took one medication, and she did not know if there were side effects. (R. 38).

Xiong was inpatient at Integris Grove General Hospital (the "Grove Hospital") from May 27, 2008 to May 29, 2008. (R. 272-276). Xiong had onset of increasing left lower quadrant abdominal pain beginning May 26, 2008. (R. 273). A CT scan revealed a hernia, and she had laparoscopic repair. (R. 273-74). She presented to the Grove Hospital emergency room on June 2, 2008 with abdominal pain, and she was discharged with pain medication. (R. 277-84).

Xiong presented to the Siloam Springs Memorial Hospital (the "Siloam Springs Hospital") on July 16, 2008 with a chief complaint of headache and other complaints of dizziness and abdominal pain. (R. 504-13). Notes say that Xiong said that her abdominal pain arose from her work as a housekeeper after her laparoscopic hernia surgery in May, and she wanted to stay off work until she was completed recovered. (R. 508).

Xiong was seen by a nurse practitioner as a new patient at Mease Medical Clinic (the "Mease Clinic") on July 21, 2008, with a chief complaint of left side abdominal pain. (R. 347-48). She was seen by the nurse practitioner again on July 25, 2008 for a follow-up visit. (R. 345-46).

Xiong was seen by an advanced practice nurse at the Community Clinic Siloam Springs (the "Siloam Springs Clinic") on July 30, 2008 for high blood pressure and for abdominal pain. (R. 582). The nurse said that she would write a note that Xiong would be off work for two weeks. *Id.*

Xiong reported to the emergency room at the Siloam Springs Hospital on August 1, 2008 with complaints of abdominal pain, nausea, and chest tightness. (R. 482-503). A CT scan of Xiong's abdomen was completed and showed "no acute process." (R. 367, 485, 499). Multiple laboratory tests were completed, and clinical impressions were low potassium blood level, hypertension, and urinary tract infection. (R. 485, 491-503).

Xiong was seen by the nurse at the Siloam Springs Clinic on August 8, 2008 and September 2, 2008. (R. 578, 580).

Xiong was seen again by the nurse practitioner at the Mease Clinic on September 18, 2008 with a complaint of continuing frequent left side pain. (R. 342-45). On that date, Darrell Mease, M.D. wrote a certificate to return to work that stated that Xiong was under his care and could not return to work until his office received results of x-rays. (R. 269). Imaging of Xiong's pelvis on September 23, 2008 showed "soft tissue masses consistent with fibroids" of her uterus and small follicular type cysts of her left ovary. (R. 321, 480). Imaging of Xiong's abdomen showed a right renal cyst and possible small 2 mm left renal calcification. (R. 359-60, 478).

A urologist treated Xiong for a urinary tract infection on November 5, 2008 and recommended additional imaging. (R. 358).

Xiong presented to the emergency room at the Siloam Springs Hospital on November 21, 2008. (R. 467-74). A CT scan of Xiong's pelvis identified two left ovarian cysts with a possible recent rupture and a "bulky uterus." (R. 357, 474). Clinical impression was acute abdominal pain with left ovarian cyst. (R. 469). A physician signed a note requesting that Xiong be excused from work through November 26. (R. 515).

Xiong was seen by a physician's assistant at the Mease Clinic on November 24, 2008, and mild lower left quadrant tenderness was noted on examination. (R. 340-41). Assessments were ovarian cyst and hypertension, and Lortab was prescribed. (R. 341).

Xiong presented to the emergency room at the Siloam Springs Hospital on December 3, 2008 complaining of near-fainting, dizziness, and abdominal pain. (R. 454-66). Clinical impressions were urinary tract infection and gastritis. (R. 457). A physician signed a note requesting that Xiong be excused from work on December 3-4, 2008. (R. 516).

Xiong returned to see the physician's assistant at the Mease Clinic on December 11, 2008, and mild epigastric tenderness was noted on physical examination. (R. 337-39). Acute peptic ulcer was assessed, and medications were prescribed to address that condition. (R. 338).

Xiong returned to the emergency room at the Siloam Springs Hospital on December 15, 2008. (R. 443-53). Clinical impressions were urinary tract infection and low potassium blood level. (R. 446). A physician signed a note requesting that Xiong be excused from work on December 16, 2008. (R. 517).

Xiong returned to the Mease Clinic on December 16, 2008, and mild epigastric and left lower quadrant tenderness were noted on examination. (R. 335-36). The physician's assistant stated that he was unsure of "pathology in this patient who seems to not want to work." (R. 336).

Xiong returned to the emergency room of the Grove Hospital on January 9, 2009 with chest pain. (R. 286-94). It appears that she was diagnosed with acid reflux and dehydration. *Id.*

Xiong returned to the emergency room at the Siloam Springs Hospital on January 16, 2009. (R. 428-42). Clinical impressions were headache, abdominal pain, and hematuria. (R. 431).

On January 16, 2009, Xiong returned to the Mease Clinic and was seen by the physician's assistant for abdominal pain. (R. 332-34). On examination, she had mild tenderness in the left and right upper and periumbilical areas. (R. 333). The physician's assistant stated that Xiong needed "more time off work which seems to be a recurrent theme." *Id.* He said he would refer Xiong to a gastroenterologist. *Id.* Dr. Mease wrote a certificate that Xiong would be off work for one month and could return to work on February 16, 2009. (R. 270). At a follow up appointment with the physician's assistant on February 3, 2009, Xiong's pain was described as "pelvic pain" and "female pelvic pain." (R. 330-31). Xiong was prescribed Trazodone for chronic insomnia. (R. 331).

Xiong was seen at Siloam Springs Women's Center on February 5, 2009 for left lower quadrant pain, and imaging completed the next day showed that her uterus had "multiple densities" and her left ovary had a "2 cm follicle." (R. 316-20).

A colonoscopy completed on February 13, 2009 was negative. (R. 295-314).

On February 16, 2009, Xiong had a total vaginal hysterectomy with left salpingo oophorectomy at the Siloam Springs Hospital. (R. 403-27). The surgeon wrote a note that Xiong could return to work with full duty and no restrictions on March 16, 2009. (R. 520).

Xiong presented to the emergency room at the Siloam Springs Hospital on October 3, 2009 with acute abdominal pain. (R. 393-403). Clinical impression was constipation. (R. 396).

Xiong was seen by a nurse practitioner at the Mease Clinic on October 9, 2009 for abdominal pain. (R. 327-29).

Xiong returned to the emergency room at the Siloam Springs Hospital on October 14, 2009. (R. 376-92). Clinical impressions were abdominal pain and headache. (R. 379). The physician noted that he discussed normal findings with Xiong's husband at length. *Id.*

Xiong was seen at Green Country Family Clinic on October 20, 2009 with complaints of pain in her left side and pain in her head, neck, back, right arm, and right leg. (R. 550-51).

Xiong returned to see the nurse practitioner at the Mease Clinic on February 5, 2010. (R. 324-26). She complained of right lower quadrant abdominal pain, headaches, and severe fatigue. (R. 324). On examination, Xiong was noted to be agitated, argumentative, distrustful, and hostile. (R. 325). A urinalysis result showed trace blood. (R. 326). She was prescribed medication for high blood pressure and given a referral to a gastroenterologist. *Id.*

Xiong presented to Saint Francis Hospital on February 5, 2010 with a chief complaint of pain at hernia repair site. (R. 553, 558-68). An ultrasound of Xiong's abdomen was negative. (R. 563). Impressions were acute abdominal pain and hematuria. (R. 566). A physician wrote a note requesting that Xiong be excused from work February 5-7, 2010. (R. 553).

Xiong was seen by the nurse at the Siloam Springs Clinic on February 25, 2010 and prescribed Tramadol for lower right quadrant abdominal pain, as well as refills for hypertension medication. (R. 583).

Nonexamining agency medical consultant, Walter W. Bell, M.D., completed a Physical Residual Functional Capacity Assessment on May 5, 2010. (R. 599-606). Dr. Bell indicated that Xiong could occasionally lift or carry up to 20 pounds and frequently lift or carry up to 10 pounds. (R. 600). He found that, in an 8-hour workday, Xiong could stand and/or walk for about 6 hours and could sit for about 6 hours. *Id.* For narrative explanation, Dr. Bell reviewed Xiong's complaints and history of hernia repair and hysterectomy. (R. 600-01). He summarized a February 2010 examination at the Mease Clinic. *Id.* He reviewed the history of imaging studies and emergency room visits "with multiple negative workups." *Id.* Dr. Bell stated that Xiong's activities of daily living were limited due to her pain, and that this was "not fully supported by

the objective exams." *Id.* He said that some limitation was due to chronic abdominal pain and that had been considered in formulating his RFC opinion. *Id.* Dr. Bell found no postural, manipulative, visual, communicative, or environmental limitations were established. (R. 601-03).

## Procedural History

Xiong filed an application on February 18, 2010, seeking disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. (the "Act"). (R. 154-57). Xiong alleged onset of disability as October 7, 2009. (R. 154). Xiong filed an application on June 18, 2010 for supplemental security income benefits under Title XVI of the Act. (R. 158-66). The applications were denied initially and on reconsideration. (R. 53-61, 68-73). A hearing before ALJ Deborah L. Rose was held May 3, 2011. (R. 27-47). By decision dated July 28, 2011, the ALJ found that Xiong was not disabled. (R. 13-21). On January 17, 2013, the Appeals Council denied review of the ALJ's findings. (R. 1-4). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability

claim. 20 C.F.R. § 404.1520.[1]  *See also Wall v. Astrue*, 561 F.3d 1048, 1052-53 (10th Cir. 2009) (detailing steps).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  *Lax*, 489 F.3d at 1084 (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.  *Wall*, 561 F.3d at 1052 (quotations and citations omitted).  Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Id.*

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  20 C.F.R. § 404.1520.

**Decision of the Administrative Law Judge**

The ALJ found that Xiong met insured status requirements through December 31, 2013. (R. 15). At Step One, the ALJ found that Xiong had not engaged in any substantial gainful activity since her amended asserted onset date of May 27, 2008. *Id.* At Step Two, the ALJ found that Xiong had severe impairments of "history of ectopic pregnancy, hernia surgery and hysterectomy, considered in combination." *Id.* At Step Three, the ALJ found that Xiong's impairments did not meet a Listing. (R. 16).

The ALJ determined that Xiong had the RFC to perform light work, with only occasional stooping and no climbing ropes, ladders and scaffolds. *Id.* At Step Four, the ALJ found that Xiong was able to perform past relevant work. (R. 19-20). As an alternative finding at Step Five, the ALJ found that there were significant numbers of jobs in the national economy that Xiong could perform, taking into account her age, education, work experience, and RFC. (R. 20-21). Therefore, the ALJ found that Xiong was not disabled from May 27, 2008 through the date of her decision. (R. 21).

**Review**

Xiong asserts that the ALJ failed to perform an adequate credibility assessment. Regarding this issue, the Court finds that the ALJ's decision is supported by substantial evidence and complies with legal requirements. Thus, the ALJ's decision is AFFIRMED.

Credibility determinations by the trier of fact are given great deference. *Hamilton v. Secretary of Health & Human Services,* 961 F.2d 1495, 1499 (10th Cir. 1992).

> The ALJ enjoys an institutional advantage in making [credibility determinations]. Not only does an ALJ see far more social security cases than do appellate judges, [the ALJ] is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.

*White v. Barnhart,* 287 F.3d 903, 910 (10th Cir. 2002).  In evaluating credibility, an ALJ must give specific reasons that are closely linked to substantial evidence.  *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); Social Security Ruling 96-7p, 1996 WL 374186.  "[C]ommon sense, not technical perfection, is [the] guide" of a reviewing court.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

At the onset, the undersigned notes that the ALJ used boilerplate provisions to introduce the issue of assessing credibility and to conclude that discussion.  (R. 17, 19).  Boilerplate language is disfavored because it fails to inform the reviewing court "in a meaningful, reviewable way of the specific evidence the ALJ considered."  *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004).  However, boilerplate language is "problematic only when it appears 'in the absence of a more thorough analysis.'"  *Keyes–Zachary,* 695 F.3d at 1170 (quoting *Hardman*).  The question here is whether there was a "more thorough analysis" that satisfied legal requirements.  More specifically, Xiong in her Reply Brief makes clear that her principal complaint is that the ALJ recited evidence and concluded that Xiong was not fully credible, but did not analyze the evidence or closely link the evidence to the reasons for reduced credibility.  Plaintiff's Reply Brief, Dkt. #24.  The Court's conclusion, as explained below, is that the ALJ's assessment is adequate.

The Court is convinced that the ALJ's findings here are "closely enough linked to the evidence to pass muster."  *Keyes-Zachary*, 695 F.3d at 1172.  After the introductory paragraph stating that she found claimant's statements not credible to the extent that they were inconsistent with her RFC determination, the ALJ discussed the treating medical evidence in some detail.  (R. 17-18).  While it would have made the Court's task easier if the ALJ would have linked the evidence to credibility in a more direct way, the ALJ made her reasoning clear.  *Keyes-Zachary*,

695 F.3d at 1166 ( "[t]he more comprehensive the ALJ's explanation [for weight given opinion evidence], the easier our task").  In a paragraph devoted to Xiong's treatment at the Mease Clinic in 2008 and 2009, the ALJ emphasized the word "mild" in the descriptions of Xiong's pain from those medical records three times.  (R. 18).  Thus, it is evident that the ALJ was contrasting the findings of "mild" pain on at least three different occasions at the Mease Clinic with Xiong's testimony that her pain was so severe that she was completely disabled.  *Keyez-Zachary*, 695 F.3d at 1172.  As was true in *Keyes-Zachary*, the ALJ was clearly not rejecting Xiong's complaints of disabling pain due to lack of persistence, but due to lack of intensity.  *Id.* at 1171.  While it would have been preferable for the ALJ to make the link more explicit, the Court can follow the ALJ's reasoning that this evidence supported her ultimate conclusion that Xiong's "allegations of pain and functional loss in her testimony appear to be an overstatement."  (R. 19).

The ALJ also noted the comments made by the treating staff at the Mease Clinic that Xiong seemed "to not want to work," and that she needed "more time off work which seems to be a recurrent theme."  (R. 18).  Again, the ALJ should have directly stated that this evidence indicated that Xiong was not motivated to work, which is a legitimate reason for a finding of reduced credibility.  *See, e.g., Arles v. Astrue*, 438 Fed. Appx. 735, 738-39 (10th Cir. 2011) (unpublished).  Even without this direct linkage, however, the ALJ's reasoning is clear.

Further, the ALJ explicitly discussed credibility in a portion of her decision in which she explained that she included limitations in the RFC determination that had not been included by the nonexamining experts who assessed Xiong's RFC.  (R. 18-19).  The ALJ said that she gave "some credence" to Xiong's complaints of balance problems and pain with reaching, and she had added limitations of no climbing and only occasional stooping to her RFC determination in order to address those complaints.  *Id.*

Finally, the ALJ stated that she had considered relevant regulations and Social Security Rulings, including the ones that Xiong complains were ignored, SSR 96-7p and 20 C.F.R. § 404.1529. (R. 16). The ALJ listed the factors of Section 404.1529 as well. (R. 19). *Wall*, 561 F.3d at 1070 (court takes the ALJ at his word when he states that he has considered all of the evidence). Moreover, as discussed above, the Tenth Circuit has made clear that all of the elements need not be discussed so long as there are legitimate reasons given that are closely linked to substantial evidence:

> [S]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, he need not make a formalistic factor-by-factor recitation of the evidence. Again, common sense, not technical perfection, is our guide.

*Keyes-Zachary*, 695 F.3d at 1167 (quotation and citation omitted).

The ALJ's credibility assessment was properly supported by legitimate reasons that were linked to substantial evidence in a fashion that satisfied legal requirements. The Court therefore finds that the ALJ's credibility assessment was sufficient, and the ALJ's decision is hereby AFFIRMED.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and complies with legal requirements. The decision is **AFFIRMED**.

Dated this 6th day of March 2014.

_____
Paul J. Cleary
United States Magistrate Judge